State of Nebraska, appellee, v.
Niccole A. Wetherell, appellant.

609 N.W. 2d 672

Filed April 27, 2000.    No. S-99-866.

J. William Gallup, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Stephan, J.

On March 24, 1999, Niccole A. Wetherell pled no contest to a charge of first degree murder in the district court for Sarpy County, Nebraska. In exchange for her plea, the State dismissed a related charge of using a deadly weapon during the commission of a felony. Prior to sentencing, Wetherell moved to withdraw her plea. After conducting an evidentiary hearing, the district court denied the motion. Wetherell was subsequently sentenced to life in prison and now appeals, asserting that the district court erred in not permitting her to withdraw her plea. We find no error and therefore affirm the judgment of the district court.

## BACKGROUND

In an information filed in the district court for Sarpy County, Wetherell was charged with first degree murder and use of a

weapon to commit a felony in connection with the death of Scott Catenacci on or about September 29, 1998. Wetherell and others charged in Catenacci's death appeared for arraignment on November 13. Wetherell appeared at the arraignment with her attorney, Marc B. Delman. Addressing the group which included Wetherell, the district court explained the purpose and nature of the arraignment procedure; the general consequences of a felony conviction; the right to trial by jury, and the general procedures followed in a jury trial; the right to a speedy trial; the right to assistance of counsel; the right to be present at trial and to confront witnesses; the privilege against self-incrimination; the presumption of innocence and the nature of the State's burden of proof; and the option of entering a plea of guilty, entering a plea of not guilty, or remaining silent and having a plea of not guilty entered by the court. After explaining the statutory penalties for the offenses charged, the district court specifically asked Wetherell if she understood "that the possible penalty on Count I is actually death in the electric chair," to which she responded, "Yes, sir." The court then explained what the State was required to prove in order to obtain a conviction on the charges of first degree murder and use of a weapon to commit a felony, and Wetherell gave an affirmative response when asked if she understood this explanation. The court then explained capital sentencing procedures, and Wetherell gave affirmative responses when asked in open court if she heard and understood this explanation. When asked by the court if Wetherell was ready to enter pleas, her attorney stated that she would remain silent, and the court entered pleas of not guilty on her behalf.

On March 2, 1999, a hearing was held on Wetherell's motion to suppress. The motion itself does not appear in the record. However, at the commencement of the hearing, the court ascertained on the record that the motion related only to statements given by Wetherell. Testifying on behalf of the State, investigator Kathe Erhart of the Sarpy County sheriff's office testified that upon her arrival at the crime scene in Bellevue on the morning of September 30, 1998, she examined the body of Catenacci and declared him dead. When she notified Catenacci's mother and stepfather of his death, they identified Brandi Glynn and Chris Glynn as possible suspects. In a subsequent interview,

Brandi Glynn told Erhart that Wetherell was involved in the killing of Catenacci.

Accompanied by another law enforcement officer, Erhart located Wetherell at her residence in Bellevue shortly after 11:30 p.m. on September 30, 1998, and requested that Wetherell accompany them to the Sarpy County Law Enforcement Center to be interviewed concerning a homicide, which Wetherell agreed to do. Erhart believed that she had probable cause to arrest Wetherell at this point based upon the statement of Brandi Glynn, but chose not to do so. Erhart acknowledged, however, that Wetherell was not free to leave. Wetherell made no statements pertaining to the homicide while she was being transported by Erhart and her colleague. Upon their arrival at the law enforcement center, Erhart advised Wetherell that she wished to talk to her about the Catenacci homicide. Before conducting the questioning, Erhart read Wetherell her *Miranda* rights, recorded her affirmative response when asked if she understood each of the rights, and ascertained that she was willing to make a statement without an attorney present, as reflected on a rights advisory form, which Wetherell initialed and signed before making any statement. During questioning by Erhart in the presence of another officer, Wetherell made statements implicating herself in the death of Catenacci. At the conclusion of the interview, Erhart advised Wetherell that she was under arrest for first degree murder. After reminding Wetherell of the prior rights advisement, Erhart asked her to complete a form entitled "Voluntary Statement." Wetherell completed and signed this document, which included a printed rights advisement and declaration that the statement was made voluntarily and with full knowledge of her rights. In this document, Wetherell stated that she and several other individuals, some armed with knives, enticed their acquaintance Catenacci to leave work and to meet with them. She then generally described how Catenacci was murdered, stating in part:

> I was told over & over to make the first move, I was scared to. I made the first move, then Dan stabbed him. They (Dan & Pat) stabbed him more I called for Foxx because I was so scared. Foxx came down started stabbing him. I kept going up & down the hill I wanted to leave! I was told to

come back down. I wanted to leave I didn't want to be there! Foxx gave me an order to stab him a few more times. I wanted to say no, but I was scared James or Dan or Pat might do something to me! I just wanted to leave.

In a ruling from the bench, the district court denied the motion to suppress. The court determined that Wetherell was in police custody from the time officers first encountered her at her residence, but that she made no inculpatory or exculpatory statements during transport to the law enforcement center. The court further found that she was properly advised of her *Miranda* rights before being questioned about the homicide and that her verbal and written statements were given voluntarily, freely, and intelligently.

On March 24, 1999, Wetherell withdrew her not guilty plea and entered a plea of no contest to first degree murder pursuant to a plea agreement whereby the charge of using a weapon during the commission of a felony was dismissed. Before accepting the plea, the court ascertained that Wetherell understood the nature of the charge, the possible penalties for first degree murder, and the fact that entering the plea would waive all defenses and, in particular, would waive her right to contest the validity of the court's prior ruling on her motion to suppress. Wetherell stated on the record that she understood. The court further explained to Wetherell, prior to accepting her plea, that the plea would result in the loss of certain rights, including her right to trial and confrontation of witnesses, the presumption of innocence, and her privilege against self-incrimination with respect to the Catenacci homicide. The court further explained that the plea would relieve the State of the burden of proving her guilt beyond a reasonable doubt. Again, Wetherell stated on the record that she understood these matters. The court stated: "Do you understand that if I accept the plea, that it could possibly result in a sentence of death in the electric chair?" to which Wetherell responded, "Yes, sir." The court further ascertained from Wetherell that she was an 18-year-old high school graduate, that she was not under the influence of alcohol or other drugs, and that she had not been confined in a mental institution or under the care of a psychiatrist in the past year.

Upon the court's request to set forth a factual basis for the plea, the county attorney recited that the State would prove that

Wetherell and several other persons had planned Catenacci's death for several days; that on September 29, 1998, they stabbed him to death at or near 2300 River Road in Bellevue, Sarpy County, Nebraska; and that Wetherell inflicted the first and several subsequent stab wounds and slit Catenacci's throat. The court asked Wetherell if this was "essentially a true and correct version of what you think the evidence will be from the State's viewpoint," and she responded, "Yes, sir." Her attorney likewise agreed that the county attorney's recitation of the State's evidence was accurate. When Wetherell's attorney was asked by the court if he believed that the State's evidence "would be overwhelming at least to establish guilt beyond a reasonable doubt," he gave an affirmative response and stated that he had recommended that Wetherell accept the plea agreement. He further stated, when asked by the court, that he felt Wetherell was entering into the plea voluntarily, intelligently, and freely. In response to questioning by the court, Wetherell stated that she had discussed the facts of the case with her attorney, believed that he understood the case, and was satisfied with his services. Wetherell stated that her willingness to enter the no contest plea was not influenced by any promises, threats, force, or duress, and that she understood that if the court accepted the plea, it would find her guilty of first degree murder and sentence her at a later date. Upon Wetherell's affirmative statement that she wished to plead no contest to first degree murder, the court found

> beyond a reasonable doubt, that Ms. Wetherell appears to understand the charge, the penalties, constitutional rights, the consequences of entering a plea of no contest to the charge, and that the plea has been given voluntarily, freely, intelligently, with advice of counsel. There is a factual basis for the charge. The plea is accepted. And, Ms. Wetherell, you are now adjudged guilty of the first degree murder of Scott Catenacci as charged in Count I of the Information.

The State then dismissed the remaining count of the information pursuant to the plea agreement, and the court scheduled sentencing for June 2, 1999.

During a hearing on May 25, 1999, the district court noted that attorney J. William Gallup had entered an appearance on behalf

of Wetherell, and it granted the motion of attorney Delman to withdraw as her counsel after ascertaining from Wetherell that she wished him to do so. On the same day, a motion to withdraw plea was filed on Wetherell's behalf by her new counsel. The motion recited as grounds for withdrawal (1) that Wetherell's "actions were not premeditated"; (2) that such acts "were the product of duress and coercion by co-defendants"; (3) that her statement to law enforcement officers "was involuntary as a result of [Wetherell] having been advised by her interrogator that 'things would be better for her if she made a statement'"; (4) that Wetherell "was not called as a witness by her attorney at her suppression hearing, and no challenge was made to the statement's involuntariness" and that such a challenge "would have probably resulted in a ruling that the statement was involuntary and not admissible at trial"; (5) that Wetherell relied upon inaccurate statements of her prior counsel that "there was no possibility of a death sentence"; and (6) that Wetherell "has denied being guilty of first degree murder and her plea of Nolo Contendere was consistent with her denial of guilt."

An evidentiary hearing on this motion was held on May 26, 1999. On direct examination, Wetherell testified that she was not guilty of first degree murder because she did not know that Catenacci would be killed, only that he would be beaten. She stated she was promised by her former attorney that she would receive a life sentence if she entered a plea of no contest but would probably be sentenced to death if she went to trial. Wetherell testified that she was unaware of the possibility that she could receive a death sentence when she entered her plea and that if she had known this, she would not have entered the plea. She testified that she was frightened when she gave her statements to the police, and did so only after being told by one of the officers that "it would be better for me" if she gave a statement. Wetherell stated that she did not testify at her suppression hearing on the advice of Delman and that Delman never advised her that her sentence could be determined by a three-judge panel. On cross-examination, Wetherell admitted that the trial court advised her of various facts, including the possibility of the death penalty, before accepting her plea and that she had indicated her understanding at that time.

Delman was called as a witness on behalf of the State. He testified that he had practiced law in Nebraska for approximately 20 years and that his practice had included both prosecution and defense of criminal matters. Delman testified that Wetherell did not tell him that her statements to the police were involuntary or that she was not guilty of the offenses with which she was charged. He testified that in discussing the plea agreement with Wetherell, he told her "from day one" that she could ultimately be sentenced to life in prison or death, and that while he felt there was a better likelihood of a life sentence if she entered a plea, he had no control over the sentence and could not make any promises with respect thereto. Delman further testified that he advised Wetherell of the possibility of sentencing by a three-judge panel and discussed all options with her before she made the decision to enter her plea. On cross-examination, Delman testified that he filed the motion to suppress on Wetherell's behalf in order to "cover all the bases" in a first degree murder case and that he reviewed all police reports in the case but did not interview the investigating officer or the other persons charged in connection with Catenacci's death.

At the conclusion of the hearing, the court denied Wetherell's motion to withdraw her plea. In so doing, the district judge noted that he had carefully explained the consequences of Wetherell's plea before he accepted it and that her testimony in support of the motion to withdraw the plea was inconsistent with her statements made on the record immediately prior to the acceptance of the no contest plea. Wetherell was subsequently sentenced to life in prison by a three-judge sentencing panel. She perfected this timely appeal.

## ASSIGNMENT OF ERROR

As her sole assignment of error, Wetherell asserts that the court erred in not permitting her to withdraw her plea prior to sentencing.

## STANDARD OF REVIEW

Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an

abuse of that discretion. *State v. Spahnle*, 238 Neb. 265, 469 N.W.2d 780 (1991).

## ANALYSIS

■ After the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered. *State v. Minshall*, 227 Neb. 210, 416 N.W.2d 585 (1987); *State v. Nearhood*, 223 Neb. 768, 393 N.W.2d 530 (1986). The burden is upon the defendant to establish by clear and convincing evidence the grounds for withdrawing a plea. *State v. Spahnle, supra*; *State v. Nearhood, supra*.

The grounds which Wetherell asserted to the district court as constituting a fair and just reason for withdrawal of her plea fall into three general categories. First, she contends that she was coerced and subjected to duress by other persons involved in Catenacci's death and that thus, her actions were not premeditated. Second, she contends that her statements to law enforcement officials were not voluntary and that her attorney mishandled the attempt to suppress them. Third, she contends that her attorney did not inform her of the possibility that she could receive the death penalty if she entered a plea of no contest.

The record before us reveals, and Wetherell does not contest, that the requirements set forth by this court in *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), to ensure that a plea represents a voluntary and intelligent choice among the alternative courses of action open to a criminal defendant, are met in this case. Prior to entering her plea, Wetherell was clearly informed by the court concerning the nature of the charge; her rights to the assistance of counsel, a jury trial, and the confrontation of witnesses; and her privilege against self-incrimination. The court extensively examined Wetherell to determine if she understood all of her rights and the effect her plea would have on them. The State presented a factual basis to support the plea, and Wetherell was informed that the sentence for first degree murder was either life in prison or death. Moreover, Wetherell was clearly advised by the court that acceptance of the plea would result in

a waiver of her right to challenge the court's prior overruling of her motion to suppress and would relieve the State of its burden of proving guilt beyond a reasonable doubt.

Virtually all of Wetherell's testimony during the hearing on the motion to withdraw the plea is directly contradicted by her statements made on the record 2 months earlier when seeking the court's acceptance of her no contest plea. Her contention that she was unaware of the possibility of the death penalty when she entered her plea is contradicted by the district court's careful advisements, which appear in the record, and the testimony of Delman at the subsequent hearing on the motion to withdraw plea. Wetherell acknowledged on the record that by asking the court to accept her plea of no contest, she understood that she was forgoing any right to challenge the court's prior ruling regarding the admissibility of her statement to law enforcement officers. Wetherell's contention that her acts were not premeditated, but, rather, the product of duress and coercion by others, is refuted by her acknowledgment of the accuracy of the factual basis for her plea as stated by the county attorney in open court. Based upon this record, we cannot say that the district court abused its discretion in concluding that Wetherell did not meet her burden of proving, by clear and convincing evidence, a fair and just reason for withdrawal of her plea.

■ Wetherell also argues on appeal that she should have been permitted to withdraw her plea because of her initial counsel's failure to move to suppress her arrest and his alleged failure to investigate her case before advising her to enter the no contest plea. These reasons for withdrawing her plea were not presented to the trial court. An issue not presented to or passed upon by the trial court is not an appropriate issue for consideration on appeal. *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999). We decline to address Wetherell's arguments in this regard.

Finally, Wetherell argues in her brief and on oral argument that her initial counsel was ineffective because he did not interview other persons charged in the Catenacci homicide prior to advising her regarding the no contest plea. We do not reach this issue for several reasons. Wetherell has not specifically assigned ineffective assistance of counsel as error on appeal. Our review is therefore limited to determining whether the district court

abused its discretion by not permitting Wetherell to withdraw her plea for the reasons asserted in her motion. The fact that Delman did not interview other participants in the homicide was not asserted in Wetherell's motion as one of the reasons for seeking to withdraw her plea, although it was mentioned briefly during oral argument on the motion. Moreover, the record contains no indication that any persons against whom charges were pending in connection with the Catenacci homicide would have agreed to be interviewed by Delman, or that such interviews, even if conducted, would have yielded information about Wetherell's participation in the homicide different from that contained in the police reports which Delman reviewed, or inconsistent with Wetherell's own acknowledgment of the factual basis for her plea.

## CONCLUSION

We conclude that the district court did not abuse its discretion in denying Wetherell's motion to withdraw her plea of no contest prior to sentencing because she did not meet her burden of proving, by clear and convincing evidence, a fair and just reason for withdrawal. Accordingly, we affirm the judgment of the district court.

AFFIRMED.