STATE OF NEBRASKA, APPELLEE,
v. GREG A. CARLSON, APPELLANT.
619 N.W.2d 832

Filed December 8, 2000.   No. S-99-1283.

James R. Mowbray and Robert W. Kortus, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ., and Sievers, Judge.

Miller-Lerman, J.
## I. NATURE OF CASE
Greg A. Carlson was convicted of second degree murder pursuant to a plea of no contest. Carlson filed a motion to withdraw his plea. After an evidentiary hearing, the motion was denied. Thereafter, Carlson was sentenced to 60 years' to life imprisonment.

Carlson appeals his conviction, claiming that the district court abused its discretion in denying his motion to withdraw his plea. Carlson also appeals his sentence, claiming that it is excessive. We affirm Carlson's conviction and sentence.

## II. STATEMENT OF FACTS
On June 12, 1998, Carlson was charged with first degree murder in connection with the death of his estranged wife, Marilyn Carlson. Marilyn was murdered in her apartment on April 11. She was stabbed four times in the chest. Carlson pled not guilty. Trial was originally set for November 4 but was continued three times,·and the trial date was eventually set for July 6, 1999.

Prior to trial, Carlson reached a plea agreement with the State pursuant to which the State would reduce the charge to second degree murder and recommend a flat life sentence in exchange for a plea of no contest. On July 2, 1999, Carlson was re-arraigned on an amended information charging him with second degree murder.

The plea hearing was conducted on July 2, 1999. Before accepting Carlson's plea of no contest, the district court questioned Carlson as to the voluntariness of his plea. At the hearing, Carlson stated that he had had sufficient time to discuss the mat-

ter of entry of the plea of no contest with his attorney, that the plea agreement had been correctly described to the district court by the attorneys, and that he was aware that the district court was not obligated to impose the sentence recommended by the State. When asked by the court whether Carlson was satisfied with the representation of his attorney, Carlson stated, "Very."

The district court advised Carlson that by pleading no contest, he would be "giving up the right to confront witnesses against [him] . . . the right to require witnesses to be present at any hearing or trial and to have them testify on [his] behalf and . . . the right to trial to a jury." The district court advised Carlson of the range of penalties for second degree murder. Carlson stated that he understood the significance of his plea and the range of penalties for second degree murder.

The district court further asked Carlson, "[H]as anybody threatened you or coerced you or forced you in any way to make this no-contest plea?" Carlson answered, "No, sir." Carlson further indicated that he made his plea of his own free will. The district court also asked Carlson, "Knowing everything that we have discussed now up to this point, Mr. Carlson, I'm going to ask you one last time, sir, do you wish this Court to accept your no-contest plea or do you wish to withdraw it?" Carlson replied, "Accept it, sir." The district court accepted Carlson's plea and in its corresponding written journal entry filed July 2, 1999, found that Carlson's plea was "knowingly, intelligently, and voluntarily made" and that "no promises or threat [had been made] to [Carlson]." Having accepted Carlson's plea of no contest, the district court found Carlson guilty of second degree murder.

Carlson wrote a letter to the district court which was filed on July 19, 1999. In the letter, Carlson complained of his attorney's performance. Carlson asserted that his attorney had conducted an insufficient investigation which Carlson claimed was occasioned by Carlson's family's inability to raise funds to pay the attorney fees. Carlson also indicated his desire to withdraw his plea and to "take this to a jury trial." Carlson's original attorney was discharged on July 26, and the district court appointed new counsel.

The parties agreed to treat Carlson's letter filed on July 19, 1999, as a motion to withdraw the no contest plea. An evidentiary hearing was held on September 16 on the motion to with-

draw the plea. Carlson and his original attorney testified at the hearing. Their testimony is contradictory.

Carlson testified that immediately prior to entering his plea, he had discussed with his attorney certain items he thought should be investigated. Carlson testified that he had told his attorney that the attorney should interview an individual named "Joe Weakley." Carlson claimed that Weakley knew of a witness who had seen Carlson at another location on the night of the murder. According to Carlson's testimony, Carlson's attorney told him that he had contacted Weakley but that nothing had come of the interview. Carlson then told his attorney that he had called Weakley the night before and that Weakley had told Carlson that he had not been contacted by Carlson's attorney. Carlson testified that Carlson's attorney then started to walk out of the room and indicated that they should "take it to trial then." Carlson stated that he panicked because he did not think they were ready to go to trial, so he stopped his attorney and again gave him the information regarding Weakley.

Carlson testified that he asked his attorney what should be done regarding the plea. Carlson testified that his attorney replied that "if we find out more information from Joe Weakley . . . then we can come back and withdraw the plea." Carlson testified that based on the foregoing, he decided to proceed with the plea of no contest. On appeal, Carlson claims the foregoing evidence established that his attorney had promised him he could withdraw the plea and that his attorney gave him erroneous advice.

Carlson's original attorney also testified at the hearing on the motion to withdraw. The attorney's testimony regarding the advice he had given Carlson regarding entry of the plea differed from Carlson's account. The attorney indicated that he had not promised Carlson that the plea could be withdrawn. Rather, with respect to Carlson's claim that the attorney had told Carlson that he could withdraw his plea if new evidence was discovered, the attorney testified:

> I told him that it [new evidence] would have to be quite powerful and it [sic] made it clear to him the very fact that somebody might have remembered Mr. Carlson being at the park that evening was probably — would not be the

basis of a motion to withdraw; that the basis of a motion to withdraw based upon that type of evidence, I have a hard time envisioning existing, but it — as I say, it would have to involve somebody who had a specific recollection of observing Mr. Carlson through at least most of the period he was absent from the — from the Carlson's [sic] home where he was staying at the time of the homicide.

The attorney also testified that on the day of the plea, he had advised Carlson they could go to trial because "I didn't want him to think that I was trying to press him into a plea."

On September 27, 1999, the district court overruled Carlson's motion to withdraw his plea. In its written journal entry, the district court concluded that Carlson had made a "free, informed and voluntary decision" to enter his plea of no contest and that Carlson had presented no " 'fair and just reason' " to allow withdrawal of the plea. In so concluding, the district court found, inter alia, that there was no basis for Carlson to claim that he was "coerced or forced" into entering his plea. With respect to the discussion which Carlson and his attorney had regarding possible new evidence and withdrawal of a plea, the district court found that such conversations were "trial strategy discussions between [Carlson] and his counsel" and therefore not a promise to Carlson that he could withdraw his plea in the future. The district court also found that Carlson had had "sufficient time to discuss and contemplate the matter prior to pleading." The district court noted that Carlson had failed to present the witness who could purportedly provide Carlson with an alibi. The district court further stated that pleas of no contest "are treated with the seriousness for which they deserve to be treated" and that a court should not "let them be set aside solely upon [Carlson]'s feeling that he now wants a jury trial."

On November 1, 1999, the district court sentenced Carlson to imprisonment for a term of not less than 60 years nor more than life. Carlson thereafter appealed his conviction and sentence. Carlson petitioned to bypass the Nebraska Court of Appeals, and his petition to bypass was granted.

### III. ASSIGNMENTS OF ERROR

Carlson assigns three errors which combine into two. For his first assignment of error, Carlson claims, restated, that the dis-

trict court abused its discretion in concluding that Carlson had not established a "fair and just reason" for withdrawal of his plea and in denying his motion to withdraw his plea. Specifically, Carlson argues that he established fair and just reasons for withdrawal of the plea because the district court failed to ask him if any promises had been made to him prior to accepting his plea and that his original attorney had incorrectly advised him that if new evidence was discovered, Carlson could withdraw his plea. For his second assignment of error, Carlson claims that the district court abused its discretion by imposing an excessive sentence.

## IV. STANDARDS OF REVIEW

■ Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Wetherell*, 259 Neb. 341, 609 N.W.2d 672 (2000).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000).

## V. ANALYSIS

### 1. Conviction: Denial of Motion to Withdraw Plea of No Contest

Carlson argues on appeal that he established fair and just reasons for withdrawing his plea of no contest in two respects and that the district court abused its discretion in denying his motion to withdraw his plea. As his first "fair and just reason," Carlson argues that because the district court did not explicitly ask him at the plea hearing whether his plea had been induced by any "promises," the district court erred in accepting his plea. As his second "fair and just reason," Carlson argues that his evidence at the hearing on the motion to withdraw the plea proved that his decision to plead was based on his original attorney's erroneous legal advice regarding the withdrawal of pleas. For the reasons recited below, we conclude that the district court did not err when it concluded that Carlson had not established a "fair and

just reason" to withdraw his plea and that the district court did not abuse its discretion in denying Carlson's motion to withdraw his plea.

### (a) Standard of Trial Court in Ruling on Motion to Withdraw Plea Prior to Sentencing

In connection with our evaluation of Carlson's claim that the district court abused its discretion by denying his motion to withdraw his plea, Carlson observes that there is an inconsistency in the case law as to the standard which a trial court should follow when ruling on a motion to withdraw a plea prior to sentencing. We address this observation as a preliminary matter.

We recently noted the correct standard in Nebraska for a trial court's disposition of a defendant's request to withdraw a plea before sentencing as follows: After the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered. *State v. Wetherell, supra.* This is the correct standard which the trial courts in Nebraska are to apply.

We note that the standard in Nebraska differs from that suggested by the American Bar Association (ABA). The ABA has formulated the following standard:

> After entry of a plea of guilty or nolo contendere and before sentence, the court *should* allow the defendant to withdraw the plea for any fair and just reason. In determining whether a fair and just reason exists, the court should also weigh any prejudice to the prosecution caused by reliance on the defendant's plea.

(Emphasis supplied.) ABA Standards for Criminal Justice 14-2.1(a) (3d ed. 1999).

This court, in *State v. Minshall,* 227 Neb. 210, 214, 416 N.W.2d 585, 588 (1987), specifically disapproved "any statements, heretofore appearing in opinions of this court, that any form of the ABA standards governs disposition of a defendant's request to withdraw a plea before sentencing." The court in *Minshall* went on to state that the correct standard in Nebraska contains the "in its discretion, may" language rather than the

"should" language of the ABA standard. *Id.* We note that at times subsequent to the release of *Minshall,* opinions of the appellate courts of this state have incorrectly recited the standard using the "should" language in place of the "may" language. See, e.g., *State v. Spahnle,* 238 Neb. 265, 469 N.W.2d 780 (1991); *State v. James,* 6 Neb. App. 444, 573 N.W.2d 816 (1998). To the extent such cases state a standard different from the correct standard enunciated in *Minshall* and repeated by this court recently in *State v. Wetherell,* 259 Neb. 341, 609 N.W.2d 672 (2000), they are hereby disapproved.

▉ In the instant case, the district court stated the correct standard in its consideration of Carlson's motion to withdraw his plea. The district court's denial of Carlson's motion to withdraw his plea will be disturbed on appeal only if we conclude that the district court abused its discretion in determining that Carlson had not presented a fair and just reason to allow him to withdraw his plea. In this regard, we note that the burden is upon the defendant to establish by clear and convincing evidence the grounds for withdrawal of a plea. *State v. Wetherell, supra.*

### (b) Alleged Error by District Court in Accepting Plea at Plea Hearing

Carlson argues that the district court erred by failing to ask him prior to the acceptance of the plea if Carlson's plea of no contest was induced by a "promise." On appeal, Carlson claims that the absence of an inquiry at the plea hearing regarding a promise made to Carlson established a fair and just reason requiring withdrawal of the plea. We do not agree.

Carlson asserts that the district court erred in accepting his plea because it did not specifically ask him whether his plea was induced by any "promises." Carlson relies on the decision of the Court of Appeals in *State v. Jefferson,* 5 Neb. App. 646, 562 N.W.2d 77 (1997), for the proffered proposition that the trial court must explicitly ask if a "promise" had been made prior to accepting a plea. Although the trial court must ascertain that a plea is made freely, intelligently, voluntarily, and understandingly, see *State v. Irish,* 223 Neb. 814, 394 N.W.2d 879 (1986), there is no requirement in Nebraska jurisprudence that a trial court must specifically ask if any "promise" had been made prior

to validly accepting a plea. *Jefferson* imposes no such duty on the trial court, and Carlson's reliance on *Jefferson* is misplaced.

We note initially that *Jefferson* is an appeal from the denial of postconviction relief without evidentiary hearing. At issue in *Jefferson* was the sufficiency of the record regarding entry of the plea and whether an evidentiary hearing was needed to resolve the postconviction motion claim that the plea was not freely entered. In this context, in *Jefferson*, the Court of Appeals observed that

> while a plea of guilty may be valid when the judge taking the plea does not ask the defendant if any promises were made to induce that plea, nonetheless, in postconviction proceedings where the defendant alleges that his or her plea was induced by some promise, the court must hold an evidentiary hearing on the issue unless the record conclusively shows that the plea was not induced by any promises, except those included in the plea bargain.

5 Neb. App. at 652, 562 N.W.2d at 81.

The instant case is not a postconviction case, but, rather, a direct appeal. At issue in the instant case is whether the district court erred in denying Carlson's motion to withdraw his plea. In the instant case, the trial record on the issue of withdrawal of the plea consists of the record of the proceeding at which Carlson initially entered his plea as well as the record of the evidentiary hearing on the motion to withdraw the plea at which Carlson and his counsel testified. The record in the instant case is ample and conclusive, and we are therefore able to review both the circumstances surrounding the district court's acceptance of the plea and the propriety of the district court's denial of Carlson's motion to withdraw the plea.

In the instant case, although the district court did not specifically ask Carlson at the plea hearing whether his plea was induced by any "promises," in its journal entry, the district court specifically found "no promises or threat" had been made to Carlson prior to entering his plea of no contest. The colloquy between the district court and Carlson at the plea hearing was sufficient to support the district court's determination that the plea was entered freely, intelligently, voluntarily, and understandingly. See, e.g., *State v. Irish, supra.* Although such inquiry

may have been prudent, the district court was not required to specifically ascertain whether any promises had been made to Carlson before accepting the plea. To the extent that Carlson claims that the district court failed to make the proper inquiry prior to the time the plea was entered and accepted, the claim is without merit. Accordingly, the district court did not abuse its discretion in denying Carlson's motion to withdraw the plea on the basis of an inadequate allocution at the time of acceptance of the plea.

(c) Alleged Erroneous Advice by Original Counsel

Carlson argues that at the hearing on the motion to withdraw the plea, he established that his attorney had improperly promised him that he could withdraw the plea upon the possible discovery of additional evidence. On appeal, Carlson claims that his original attorney's erroneous advice upon which he relied established a fair and just reason requiring withdrawal of the plea. Following our review of the record on the motion to withdraw the plea, we cannot conclude that the district court which heard and observed the witnesses abused its discretion in rejecting Carlson's assertion that his attorney had promised him that he could withdraw his plea upon the possible discovery of additional evidence and in concluding that Carlson had failed to establish a fair and just reason to withdraw the plea.

In connection with the alleged promise by original counsel regarding entry of the plea, Carlson argues on appeal that the advice his attorney gave him was deficient, that he was prejudiced by such advice, and that he was therefore denied effective assistance of counsel. Carlson asserts that because he was denied effective assistance of counsel in connection with the entry of the plea, the district court erred in denying his motion to withdraw the plea.

In order to establish that a defendant was denied effective assistance of counsel, the defendant must ordinarily demonstrate that counsel's performance was deficient and that the defendant was prejudiced thereby. *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000). In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Williams*, 259 Neb. 234, 609

N.W.2d 313 (2000). In order to satisfy the prejudice requirement in the context of a plea, the defendant must show that his or her counsel erred and there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial. *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

Carlson claims that but for his original attorney's advice that he could withdraw his plea if new evidence was discovered, he would not have entered his plea of no contest and would have insisted upon going to trial. Carlson claims his attorney's purported advice regarding withdrawal of a plea was erroneous. In so claiming, Carlson relies on cases, not repeated here, concerning the discovery of new evidence after trial, counsel's advice in relation thereto, and the propriety of rulings on motions for new trial. See, e.g., *State v. Kluge*, 198 Neb. 115, 251 N.W.2d 737 (1977). The cases are inapposite.

At the hearing on the motion to withdraw the plea, Carlson testified that his original attorney had told him he could withdraw his plea if new evidence was discovered. In contrast, the attorney's testimony indicates that his advice regarding the utility of new evidence in connection with withdrawal of a plea was tempered by his assessment communicated to Carlson that the new evidence "would have to be quite powerful" and that he had "a hard time envisioning" the discovery of evidence in Carlson's case that would form the basis for withdrawal of a plea.

In its evaluation of the evidence from the evidentiary hearing on the motion to withdraw the plea, the district court found that the attorney's discussion with Carlson regarding the possible discovery of additional evidence and withdrawal of a plea was a part of "trial strategy discussions between [Carlson] and his counsel" and therefore not a promise to Carlson that he could withdraw his plea in the future. In denying the motion to withdraw the plea, it is clear that having heard and observed the witnesses, the district court accepted the testimony of Carlson's attorney. The court found that no promise that a plea could be withdrawn was made by the original attorney and concluded that such advice was not deficient and, therefore, Carlson's attorney was not ineffective.

Given the strong presumption that counsel acted reasonably, see *State v. Williams, supra,* and considering the above recited testimony which the district court observed and heard, we cannot find that the district court erred in crediting the attorney's testimony nor do we find that the attorney's performance as reflected in his testimony was deficient. Thus, Carlson's original attorney's performance was not deficient and Carlson was not denied effective assistance of counsel in connection with the entry of his plea of no contest.

We conclude that on this record, the district court did not abuse its discretion in concluding that Carlson had failed to present by clear and convincing evidence a "fair and just reason" to withdraw his plea. Accordingly, the district court did not err in denying Carlson's motion to withdraw his plea.

### 2. EXCESSIVE SENTENCE

Carlson asserts that the district court abused its discretion by imposing an excessive sentence. Sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion. *State v. Burdette,* 259 Neb. 679, 611 N.W.2d 615 (2000).

Second degree murder is a Class IB felony. Neb. Rev. Stat. § 28-304(2) (Reissue 1995). The statutory penalty for a Class IB felony is a maximum sentence of life imprisonment and a minimum sentence of 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1995). The district court sentenced Carlson to imprisonment for a term of not less than 60 years nor more than life upon his conviction for second degree murder. Carlson's sentence was within statutory limits.

Carlson points to such factors as his lack of a prior record, his dependent children, and his aptitude for successful rehabilitation as reasons why the sentence imposed by the district court was excessive. The State argues that such factors are "counterbalanced by the brutality of his offense, his malicious thought process whereby he stalked and killed the victim, and his attempts to conceal his commission of the crime." Brief for appellee at 16.

A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriv-

ing a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000). The record indicates no abuse of discretion by the district court in sentencing Carlson, and we conclude that this assignment of error is without merit.

## VI. CONCLUSION

We conclude that the district court did not abuse its discretion in denying Carlson's motion to withdraw his plea. We further conclude that the district court did not abuse its discretion in sentencing Carlson. We therefore affirm Carlson's conviction and sentence.

AFFIRMED.

HENDRY, C.J., not participating.