IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ALSAAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MOHAMMED F. ALSAAD, APPELLANT.

Filed January 30, 2024.    No. A-23-677.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

F. Matthew Aerni, of Aerni Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Mohammad F. Alsaad was convicted of second degree sexual assault and assault by strangulation or suffocation in the Lancaster County District Court. On appeal, he contends his no contest plea was not freely and intelligently made and argues his trial counsel was ineffective for not informing him that the State had copies of text messages between him and the victim. After reviewing the record, we find that his no contest plea was entered freely, intelligently, knowingly, and understandingly, and his ineffective assistance of counsel claim cannot be addressed on direct appeal. Therefore, we affirm.

## II. BACKGROUND

On April 19, 2021, a female victim, later identified as F.A., called police from a nearby gas station and reported that she was sexually assaulted. Officers responded to the gas station where

the call originated and found F.A. on the floor crying. She handed officers a phone to use as a language line, since she speaks only Arabic.

Officers took F.A. home, where she told them that she was moving into the new home and people from the community were helping her. One of the people helping her was a man she called "Mohammad," who was later identified as Alsaad. F.A. recounted that when she stood at the top of the basement stairs, Alsaad pulled her into the basement, started hitting her throughout her body, and started choking her with her headscarf. Alsaad dragged F.A. to a nearby room in the basement and then sexually assaulted her. F.A. eventually escaped the basement and ran to the gas station to call police.

F.A. was taken to a nearby hospital where she was examined by a Sexual Assault Nurse Examiner (SANE). F.A. had bruises all over her body. The SANE nurse took swabs from the exam and sent them to the Nebraska State Patrol Laboratory for testing.

Two days after the assault, investigators interviewed F.A. again. F.A. told officers that she had met Alsaad a few weeks prior, on April 4, 2021. She did not know how Alsaad got her phone number, but he would call and text her often. She did not know why Alsaad was trying to contact her. On the day of the assault, friends were helping her move, and Alsaad just showed up. F.A. did not know how Alsaad knew where she lived. F.A. allowed officers to take a copy of her phone and its contents.

Police contacted Alsaad, who admitted that he helped F.A. move, but denied assaulting her or having sexual intercourse. Police later obtained a court order to collect Alsaad's DNA. After his DNA was tested, it was discovered that Alsaad's DNA was present in F.A.'s SANE kit. When police informed Alsaad that his DNA was found in F.A.'s SANE kit, he responded that he and F.A. were in a relationship, and they had consensual sexual intercourse. Alsaad was arrested on October 10, 2021, and was originally charged with first degree sexual assault, which is a Class II felony, and assault by strangulation or suffocation, which is a Class IIIA felony.

1. ALSAAD ENTERS PLEA AGREEMENT

The State's counsel emailed Alsaad's counsel on June 14, 2023, with an attachment that included text messages between Alsaad and F.A. Alsaad's counsel emailed the State and reported having difficulty opening the PDF document that included the messages. The State's counsel responded on the morning of June 15, saying that she would print and scan the documents the following day.

On June 16, 2023, Alsaad's counsel informed the district court that Alsaad was prepared to enter into a plea agreement with the State. In return for Alsaad's plea of guilty or no contest, the State amended his charges to second degree sexual assault, a Class IIA felony, and assault by strangulation or suffocation, a Class IIIA felony. Alsaad affirmed that he understood the charges and possible penalties. He then pled no contest to both charges.

Before accepting Alsaad's plea, the district court informed Alsaad of the nature of his charges and his constitutional rights, including the right to confront witnesses against him, the right to present witnesses on his own behalf, the right to a jury trial, his privilege against self-incrimination, and the presumption of his innocence. It also informed him of the range of penalties for each of his crimes. It identified each of the rights Alsaad would be giving up if the

court accepted his plea and asked Alsaad if he understood. Alsaad affirmed that he understood each time he was asked.

Alsaad affirmed to the district court that he had enough time to speak with his counsel, that he was happy with her representation, and that he had told her everything he knew about the case. His counsel echoed that she believed Alsaad understood his rights. As a factual basis, the State offered the affidavit of probable cause which the court received into evidence.

The district court confirmed that Alsaad had had an opportunity to review the affidavit of probable cause and was aware of what the State believed the evidence would be if the matter went to trial. It confirmed Alsaad still wished to plead no contest. The district court found beyond a reasonable doubt that Alsaad understood his rights and freely and voluntarily waived them. It accepted his plea and convicted him of second degree sexual assault and assault by strangulation or suffocation.

### 2. ALSAAD'S FIRST MOTION TO WITHDRAW PLEA

On June 27, 2023, Alsaad motioned to withdraw his plea. At the hearing on Alsaad's motion, Alsaad argued that he was overwhelmed at the plea hearing. He explained that he has a third-grade education, English is not his first language, and he did not understand the proceedings but felt the need to go along with them. Alsaad also argued the State would not be prejudiced if he withdrew his plea.

The State disagreed that it would not be substantially prejudiced if Alsaad was able to withdraw his plea. It explained that the victim had already begun shifting her focus to completing the victim impact statement and healing from the trauma inflicted upon her. Further, although Alsaad claimed a difficulty with the English language, the State pointed out that there were jail calls between Alsaad and his wife in which he used English to discuss whether he should withdraw his plea.

The district court denied Alsaad's motion. It found that Alsaad did not meet his burden by clear and convincing evidence. It noted that there was a thorough discussion at the plea hearing regarding Alsaad's understanding of his rights, and there was no indication that he did not understand.

### 3. ALSAAD'S SECOND MOTION TO WITHDRAW PLEA

On July 12, 2023, Alsaad filed a motion for reconsideration and renewed his motion for leave to withdraw his plea. He cited new and additional information that was not available to him at the time of his plea as the justification for his motion. Alsaad's counsel also filed a motion to withdraw as counsel.

At the hearing on Alsaad's motion to withdraw his plea, Alsaad's counsel argued that the State had sent her the text messages on June 22, 2023, which were between Alsaad and F.A., but Alsaad did not know of those text messages before he entered into his plea agreement. His counsel explained that despite Alsaad being a participant in the text messages, he did not have possession of his phone in jail, and there is a difference between possessing the messages and being able to recall their existence 2 years after the fact.

The text messages themselves were in Arabic and no translations were offered. The text messages between Alsaad and F.A. totaled 60 messages beginning on April 4, 2021. Alsaad argued

that if he had known about the text messages before taking his plea, he would have insisted on going to trial. He believed that since F.A. described him as a stranger in her 911 call, the text messages could have been used to impeach F.A.'s credibility. The State offered evidence indicating that the text messages had been sent to Alsaad's counsel on June 15, prior to the plea hearing. It further argued that Alsaad was a participant in the text messages and, therefore, knew about them. The hearing concluded without the court addressing counsel's motion to withdraw.

In a written order, the district court denied Alsaad's second motion to withdraw his plea. It determined that the text messages were not newly discovered evidence because counsel received them prior to the plea hearing. Also, the fact that Alsaad had not reviewed the messages before entering his plea did not make the evidence newly discovered because he was a participant in those messages. The district court explained that "at the time of the plea hearing [Alsaad] knew of the messages between he [sic] and the victim and proceeded to enter a plea." It concluded that not having copies of those messages was not enough to meet his burden to prove a fair and just reason to withdraw his plea.

#### 4. SENTENCING IS CONTINUED

At the beginning of the sentencing hearing, Alsaad's counsel requested a continuance because the presentence investigation report (PSR) contained inaccuracies. Counsel explained that on two occasions, the probation officer did not provide an interpreter for the interview, and instead relied on a computer program to translate, so many of Alsaad's answers were inaccurately reflected. Alsaad's counsel contended that the differences in translations were enough to impact his testing results, so the district court should continue sentencing and order another PSR interview.

When questioned which portions of the PSR relied upon information obtained during the interviews without an interpreter, Alsaad's counsel was unable to identify them; rather, she pointed out that the report indicated Alsaad reported drinking daily and associated with friends with criminal histories. Alsaad, however, denied relaying any such information. Counsel also requested the court rule upon her motion to withdraw as counsel. The district court granted counsel's motion to withdraw and appointed Alsaad new counsel. It also granted Alsaad's motion for a continuance. It did not order another PSR interview, however; instead, it told Alsaad he was expected to resolve "whatever interpretation issues you had as part of the presentence investigation by the time of sentencing" and he would need to "identify each one of his disagreements at sentencing."

#### 5. ALSAAD'S THIRD MOTION TO WITHDRAW PLEA AND SENTENCING

On August 20, 2023, Alsaad filed another motion to continue his sentencing. He argued that during his PSR interview, an Arabic interpreter was not present for every session. He concluded this caused the PSR to be inaccurate. Alsaad also requested to withdraw his plea for a third time.

At the second sentencing hearing, Alsaad argued that he should be able to withdraw his plea because he did not intelligently waive his rights to enter into his plea of no contest. He explained that he was not able to look at the text messages between him and F.A. and was unable to review her medical records. He asserted that if he had been able to review the text messages and medical records, he would not have entered into his no contest plea.

The district court delineated that Alsaad's three motions to withdraw all essentially made similar arguments, and despite each having their own "twist," none of them amounted to clear and convincing evidence of a just and fair reason to allow him to withdraw his plea. It subsequently denied his third motion to withdraw his plea. The district court also denied Alsaad's motion for a continuance.

Alsaad requested that corrections be made to his PSR regarding the companions and leisure time sections. He did not articulate what was inaccurate and affirmed an interpreter had been present during some portions of the interview. The district court noted that it had read the entirety of the PSR three times and considered the relevant statutory factors. Ultimately, the district court sentenced Alsaad to 19 to 20 years' imprisonment for the second degree sexual assault charge and 2 to 3 years' imprisonment for the assault, strangulation, or suffocation charge. The sentences were ordered to be consecutive and consecutive to any other sentence previously imposed.

## III. ASSIGNMENTS OF ERROR

Alsaad assigns four errors. He assigns the district court erred in (1) accepting Alsaad's no contest plea without informing him of his right to counsel and without asking him if he understood his right to counsel; (2) overruling Alsaad's first motion to withdraw his plea; and (3) overruling Alsaad's motion for reconsideration and his third motion to withdraw his plea. Alsaad also assigns that his trial counsel was ineffective for not notifying him of the text messages or medical records before he entered into his no contest plea.

## IV. STANDARD OF REVIEW

A trial court has discretion to allow defendants to withdraw their guilty or no contest plea before sentencing. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of evidence of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *Id*. In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

Alsaad raises four assignments of error, but they address two categories: Alsaad's contested plea and ineffective assistance of counsel. Regarding his motions to withdraw, the right to withdraw a plea previously entered into is not absolute. See *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id*. The defendant has the burden of showing the grounds for withdrawal by clear and convincing evidence. *Id*.

## 1. CONTESTED PLEA

### (a) Alsaad's No Contest Plea

Alsaad claims the district court erred in accepting his no contest plea because he did not waive his rights freely, intelligently, voluntarily, and understandably. He asserts that because the district court failed to inform him of his constitutional right to counsel and ensure he understood what that right meant, he could not have known the contours of that right. He contends if he had been adequately informed of his right to counsel and its contours, he would not have pled no contest. Alsaad likens his case to *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023).

To support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly, the court must (1) inform the defendant concerning the (a) nature of the charge, (b) right to assistance of counsel, (c) right to confront witnesses against the defendant, (d) right to a jury trial, and (e) privilege against self-incrimination; and (2) examine the defendant that he or she understands the foregoing. *Id*. Additionally, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. *Id*. A voluntary and intelligent waiver of the above rights must affirmatively appear from the face of the record. *Id*.

In *State v. Mead, supra*, the Nebraska Supreme Court held that a district court's failure to ensure the defendant understood his rights meant the defendant could not enter a no contest plea freely, intelligently, voluntarily, and understandably. The district court had only informed the defendant of his rights, but never asked him if he understood those rights. *Id*. The Supreme Court reasoned that the record must show the defendant understood that by pleading no contest, he was waiving his constitutional rights and provided an affirmative, express waiver of those rights. *Id*.

Alsaad argues that akin to *Mead*, the district court failed to tell him he had the right to the assistance of counsel and failed to ensure he understood that right before accepting his plea of no contest; therefore, his no contest plea was not entered into freely, intelligently, voluntarily, and understandably. Although it is true that in *Mead*, the Supreme Court included the right to assistance of counsel in the list of rights of which a defendant must be advised, it has consistently held failure to advise a represented defendant of that right does not necessarily negate a guilty plea. See, e.g., *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016); *State v. Watkins*, 277 Neb. 428, 762 N.W.2d 589 (2009); *State v. Neal*, 216 Neb. 709, 346 N.W.2d 218 (1984). As explained in *State v. Neal, supra*, to hold as error a failure to explain to a defendant that he had the right to counsel, when he is represented by counsel and attests to counsel's satisfactory representation, "would be the epitome of [a] slavish technicality." *Id*. at 712, 346 N.W.2d at 220.

Here, the district court informed Alsaad of each of his constitutional rights and asked him if he understood those rights. Alsaad affirmed that he understood each of the rights the district court discussed. The only right the court did not inform Alsaad of was his right to the assistance of counsel. The district court asked Alsaad if he was satisfied with his trial counsel's performance, to which Alsaad replied he was. It also asked Alsaad if he had an opportunity to speak with his trial counsel about his rights, and both Alsaad and his trial counsel affirmed he did. Alsaad was not informed of his right to the assistance of counsel, but he was represented by counsel at the time he entered his no contest plea and affirmed that he was satisfied with her performance.

Contrary to Alsaad's argument, this case is more akin to *State v. Neal, supra*, and its progeny, than *State v. Mead, supra*, which dealt with whether a defendant understood his constitutional rights. Alsaad had counsel at his plea hearing and affirmed that he was satisfied with his counsel's performance; therefore, the district court's failure to advise Alsaad of his right to counsel does not render his plea involuntary.

(b) Alsaad's First Motion to Withdraw Plea

Alsaad argues that because his plea should not have been accepted originally, there were just and fair reasons to support his first motion to withdraw his plea. He contends that "due to an inadequate advisement of rights, and in adequate [sic] examination of [Alsaad] as to his understanding of those rights," the district court should have granted his first motion to withdraw. Brief for appellant at 18.

However, at the hearing on July 6, 2023, Alsaad did not raise the failure to advise him of the right to counsel as a basis for his motion to withdraw. Rather, he argued that he felt overwhelmed at the plea hearing and did not understand the full proceeding. On appeal, Alsaad attempts to bootstrap onto this argument that he did not understand the proceedings because the proceedings were not adequately explained in that he was not advised of his right to counsel nor asked if he understood that right. But this was not presented to the district court. An issue not presented to or passed upon by the trial court is not an appropriate issue for consideration on appeal. *State v. Wetherell*, 259 Neb. 341, 609 N.W.2d 672 (2000). However, as explained above, the absence of an advisement of the right to counsel did not render Alsaad's no contest plea invalid, nor would it provide a fair and just reason for withdrawing it.

(c) Alsaad's Second and Third Motions to Withdraw Plea

Alsaad's motion to reconsider, which is his second motion to withdraw plea, sought leave to withdraw his plea based on what he believed to be newly discovered evidence: the text messages between him and F.A. On appeal, Alsaad concedes that the text messages were not newly discovered but believes them to be impeachment evidence and potentially exculpatory. He argues that because the evidence was material to a potential defense, and counsel did not inform him of the material, his trial counsel's conduct was deficient. He contends that had his trial counsel disclosed the text messages to him before his no contest plea, he would have insisted on going to trial. Since his counsel's conduct was deficient, he asserts the district court should have found that there were fair and just reasons to grant his motion to withdraw.

Despite Alsaad's argument on appeal, his second motion to withdraw his plea asserted newly discovered evidence as its basis. At the July 31, 2023, hearing, counsel argued that the text messages were received on June 22, after the plea hearing, and that they contradicted F.A.'s assertion that she and Alsaad were strangers. She asserted that had Alsaad obtained those text messages prior to the plea hearing, he would have insisted on going to trial. Counsel did not argue, nor could she have argued, that Alsaad should be allowed to withdraw his plea because she failed to advise him that the State provided the text messages prior to the plea hearing.

The district court determined that the messages were not newly discovered because counsel obtained them prior to the hearing and Alsaad was a participant in those conversations. We agree that the messages do not constitute newly discovered evidence which was the basis presented to

the district court; therefore, it did not err in denying Alsaad's motion on the basis of newly discovered evidence and we do not consider Alsaad's alternate argument on appeal. See *State v. Wetherell, supra*.

Alsaad's third motion to withdraw his plea was filed by new counsel but fares no better. The motion stated only that Alsaad sought to withdraw his plea and did not contain a basis for the motion. At the hearing on August 24, 2023, counsel stated only that Alsaad did not give an intelligent waiver of his no contest plea because he was not given an opportunity to review the messages between him and F.A. Had he been given the opportunity to review the materials, he contends he would not have entered a no contest plea. (We note he also argued he was not provided medical records, but he does not argue that on appeal.) The district court recognized that this third request "has a slight twist" on Alsaad's prior motions, but determined it was essentially the same and did not present a fair and just basis for withdrawal of the plea.

Alsaad argues on appeal that his prior counsel's failure to timely advise him of the messages combined with the importance of the messages (that he and F.A. were not strangers), provided a fair and just reason to allow him to withdraw his pleas. He relies upon his argument above that the text messages were impeachment evidence and potentially exculpatory. He argues that because the evidence was material to a potential defense, and prior counsel did not inform him of it, his prior counsel's conduct was deficient and deficiency of counsel provides a fair and just reason for withdrawal of a plea.

But this argument was not presented to the court in support of Alsaad's third motion. Counsel simply argued that Alsaad "wasn't given an opportunity to review the messages between him and the accuser in this case," and "he wasn't able to review the transcript of his messages with the alleged victim until after his plea." He made no assertion of prior counsel's deficient performance, nor did he argue the importance of the messages. We find no abuse of discretion in the district court's denial of his third motion based upon the reason presented to it: that Alsaad was not given an opportunity to review the messages between him and F.A. prior to pleading no contest. The court had already determined that Alsaad was a participant in those messages and, therefore, knew about them and their content when he entered his plea.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Alsaad argues that his trial counsel was ineffective because she failed to notify him about the text messages and medical records she received prior to Alsaad entering into his no contest plea. Alsaad claims that if his trial counsel had told him about the text messages, then he would have gone to trial instead of taking the plea agreement.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*. When the claim is raised on direct appeal, the appellant is not required to allege prejudice; however, appellants must make specific allegations of the conduct that they claim constitute deficient performance by trial counsel. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020).

Here, the record is insufficient to address Alsaad's claim that his trial counsel was ineffective for not telling him the State had shared text messages with her. Although the text messages are included in the record, they are in Arabic. Alsaad's trial counsel could not read Arabic, and there is no indication in the record that she knew what the messages said prior to the plea hearing. The record does not reflect what Alsaad and his counsel discussed about the text messages and she acknowledged she had not told him about the text messages prior to entering his no contest plea; thus, his claim is preserved.

Although Alsaad assigned error to his trial counsel's failure to inform him about F.A.'s medical records, he does not present any argument about F.A.'s medical records. Since it is not argued, we will not address it. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

## VI. CONCLUSION

We find that the district court did not err in accepting Alsaad's plea of no contest and did not abuse its discretion in denying Alsaad's motions to withdraw. We cannot address Alsaad's ineffective assistance of counsel claim on direct appeal and it is preserved.

AFFIRMED.