Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/05/2017 09:13 AM CDT

State of Nebraska, appellee, v.
Ramon M. Kirby, appellant.
___ N.W.2d ___

Filed August 29, 2017.    No. A-16-741.

1. **Pleas: Courts.** A trial court has discretion to allow defendants to with-
   draw their guilty or no contest pleas before sentencing.
2. **Pleas: Appeal and Error.** An appellate court will not disturb the trial
   court's ruling on a presentencing motion to withdraw a guilty or no con-
   test plea absent an abuse of discretion.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists
   only when the reasons or rulings of a trial judge are clearly untenable,
   unfairly depriving a litigant of a substantial right and denying a just
   result in matters submitted for disposition.
4. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court.
5. **Pleas.** To support a finding that a defendant freely, intelligently, volun-
   tarily, and understandingly entered a guilty plea, a court must inform a
   defendant about (1) the nature of the charge, (2) the right to assistance
   of counsel, (3) the right to confront witnesses against the defendant, (4)
   the right to a jury trial, and (5) the privilege against self-incrimination.
   The record must also show a factual basis for the plea and that the
   defendant knew the range of penalties for the crime charged.
6. **Pleas: Proof: Appeal and Error.** The right to withdraw a plea previ-
   ously entered is not absolute. When a defendant moves to withdraw
   his or her plea before sentencing, a court, in its discretion, may sustain
   the motion for any fair and just reason, provided that such withdrawal
   would not substantially prejudice the prosecution. The defendant has
   the burden to show the grounds for withdrawal by clear and convinc-
   ing evidence.
7. **Sentences.** Factors a judge should consider in imposing a sentence
   include the defendant's age, mentality, education, experience, and social
   and cultural background, as well as his or her past criminal record or

law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime.

8. **Bonds: Appeal and Error.** A pretrial bond and an appeal bond after conviction are treated differently.

9. **Bonds.** Neb. Rev. Stat. § 29-2302 (Reissue 2016) requires that a reasonable bond be set following a misdemeanor conviction in district court.

10. **Bonds: Appeal and Error.** Reasonableness of the appeal bond amount is determined under the general discretion of the district court.

11. ____: ____. Factors to be considered in determining the reasonableness of a defendant's appeal bond under Neb. Rev. Stat. § 29-2302 (Reissue 2016) following a misdemeanor conviction include the atrocity of the defendant's offenses, the probability of the defendant appearing to serve his or her sentence following the conclusion of his or her appeal, the defendant's prior criminal history, and the nature of other circumstances surrounding the case.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Douglas J. Peterson, Attorney General, Erin E. Tangeman, and, on brief, George R. Love for appellee.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Bishop, Judge.

Ramon M. Kirby pled no contest to two counts: (1) criminal mischief causing a pecuniary loss between $500 and $1,500, a Class I misdemeanor, and (2) third degree domestic assault, a Class I misdemeanor. The district court sentenced him to concurrent sentences of 270 days' imprisonment on each count. Kirby argues that the district court would not allow him to withdraw his pleas, imposed excessive sentences, and set an unreasonable appeal bond. For the following reasons, we affirm.

## BACKGROUND

On July 17, 2014, the State filed an information charging Kirby with three counts: (1) criminal mischief causing

a pecuniary loss over $1,500, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-519(1) and (2) (Reissue 2008); (2) terroristic threats, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2008); and (3) domestic assault, third degree, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-323(1) and (4) (Cum. Supp. 2014). We note that Kirby's offenses occurred prior to August 30, 2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.

In December 2014, the State filed an amended information charging Kirby with two counts: (1) criminal mischief causing a pecuniary loss between $500 and $1,500, a Class I misdemeanor, pursuant to § 28-519(1) and (3); and (2) third degree domestic assault, a Class I misdemeanor, pursuant to § 28-323(1) and (4). Pursuant to a plea agreement, Kirby pled "no contest" to counts 1 and 2 of the amended information. According to the factual basis provided by the State:

> [O]n September 6th, 2013, approximately 6:04 a.m., the Lincoln Police Department received a report of a domestic assault. They received that report from [T.G.] Officers were dispatched to her residence . . . here in Lincoln, Lancaster County, Nebraska.
>
> She indicated that between the hours of three o'clock a.m. and five o'clock a.m. on September 6th, 2013, she was assaulted by her then boyfriend, [Kirby]. She said that she had been with [Kirby] for approximately 15 years. She returned home and [Kirby] was already there. She indicated at some point, while they were in the home together, he became belligerent, so she asked him to leave. She said that [Kirby] refused to leave the house, became physical with her.
>
> She said that as she was walking towards the bedroom, [Kirby] punched her in the face, forced her into the bedroom, forced her onto the bed, and then once she was on the bed, he got on top of her, put his knees on her chest

and put one hand around her neck and the other on her head. She said she was unsure if her airway was ever obstructed, but she did have significant red marks on her neck and her face from the assault, and those were visible to the officer. She also indicated that while he was on top of her, on the bed, he said that he was going to kill her.

[T.G.] indicated that eventually she was able to get away from him and she left the house, went to her daughter's house . . . . She stayed there for some time before returning to the home. . . .

Once [T.G. and her daughter] went into the home, they found that [Kirby] had caused significant damage to some items, there was a broken computer. Also in the bathroom, they noticed that [Kirby] had caused some damage as well, evidently he had plugged up the toilet or something of that nature; turned on the water, and water had been overflowing into the bathroom, and then that flowed down into the basement, and they noticed that there was standing water in the basement as a result of the running water.

There was [sic] damage estimates in excess of $3,000. The total restitution of damage in this case was $3,453.60.

The State also noted that as part of the plea agreement, Kirby was to plead to the two Class I misdemeanors in the amended petition and to pay restitution in the amount of $3,453.60, which he had paid. When Kirby was asked if that was his understanding of the plea deal, Kirby responded, "Not quite. They were supposed to reduce the charges considerably, according to how fast I paid off the restitution, and I paid it off rather quick . . . [a]nd, no, they did not keep their word." Defense counsel informed the court that Kirby may be referring to an original agreement to deal with his case in county court, when Kirby was represented by different counsel; current counsel's understanding was the offer had been

withdrawn and the case bound over to district court. Kirby said he hired his current counsel because his previous counsel "did not make the prosecutor keep their word." After defense counsel was allowed to confer with Kirby, Kirby confirmed to the court that the plea agreement outlined at the hearing was the agreement as he understood it that day and that he wanted the court to accept that plea agreement and his no contest plea to each charge. The district court accepted Kirby's no contest pleas to counts 1 and 2.

Kirby failed to appear for sentencing in February 2015, and a warrant was issued for his arrest. He was not arrested on the warrant until April 2016.

In June 2016, Kirby appeared before the district court for a hearing on his motion to withdraw plea. (The motion does not appear in our record, but the judge's notes indicate that it was filed in April.) The district court denied the motion, reasoning that Kirby understood the nature and terms of the agreement at the time of his plea.

On August 2, 2016, the district court sentenced Kirby to concurrent sentences of 270 days' imprisonment on each count, with 11 days' credit for time served. According to the "Judges Notes" appearing in our transcript, on August 3, the district court set an appeal bond "in the amount of $250,000 Reg. 10% bond with community corrections conditions" and Kirby was "remanded to custody pending posting of appeal bond."

Kirby now appeals.

## ASSIGNMENTS OF ERROR

Kirby assigns, reordered, that the district court erred when it (1) denied Kirby's motion to withdraw his pleas, (2) imposed excessive sentences, and (3) set an unreasonable appeal bond.

## STANDARD OF REVIEW

[1-3] A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). An appellate court will not disturb the trial court's ruling on a presentencing

motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

## ANALYSIS

*Motion to Withdraw Plea.*

Kirby asserts that the district court's denial of his motion to withdraw plea was an abuse of discretion because "[i]t is clear from the record that [Kirby] did not fully understand the nature and terms of the plea agreement," in that he believed the agreement "included a [further] substantial reduction in the charges in congruence with him paying restitution." Brief for appellant at 17.

[5] To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty plea, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Carr, supra*. The record must also show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id*. Kirby was advised as to all of the above, and a factual basis for the pleas was given at the December 2014 plea hearing.

[6] The right to withdraw a plea previously entered is not absolute. *State v. Carr, supra*. When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially

prejudice the prosecution. *Id*. See, also, *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000) (reaffirming standard is that court *may* allow defendant to withdraw plea, not that court *should* allow defendant to withdraw plea). The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *State v. Carr, supra*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

According to Kirby, Nebraska case law "affords little guidance in articulating a coherent meaning for the 'fair and just' standard." Brief for appellant at 15-16. However, while the cases may not "articulate" a definition for "fair and just," they nevertheless provide guidance. See, *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016) (holding that newly discovered evidence can be fair and just reason to withdraw plea before sentencing, but defendant failed to meet his burden by clear and convincing evidence); *State v. Schneider*, 263 Neb. 318, 640 N.W.2d 8 (2002) (trial court did not abuse its discretion when it did not allow defendant to withdraw plea after he learned he would be required to register as sex offender); *State v. Roeder*, 262 Neb. 951, 636 N.W.2d 870 (2001) (defendant's assertion that she felt coercion and duress to make plea was not fair and just reason to withdraw plea; only evidence of duress and coercion was fact that defendant missed trial date prior to entering pleas and was told by counsel that if she did not accept plea she would spend time in jail due to her failure to appear); *State v. Carlson, supra* (defendant's assertion his attorney promised he could withdraw plea upon possible discovery of additional evidence failed to establish fair and just reason to withdraw plea); *State v. Schurman*, 17 Neb. App. 431, 762 N.W.2d 337 (2009) (defendant was not represented at plea hearing, exhibited confusion, and suffered from bipolar disorder and hearing loss; counsel subsequently appointed for sentencing phase motioned to withdraw plea

but motion was denied; reversed on appeal because defendant should have been permitted to withdraw pleas based on record presented).

At the hearing on Kirby's motion to withdraw plea, the court received into evidence the bill of exceptions from the December 2014 plea hearing described previously. Kirby acknowledged that after the plea agreement was "put on the record," he conferred with counsel off the record. Defense counsel then inquired about Kirby's recollection of that conversation during the following colloquy:

Q[:] . . . Kirby, what is your recollection of our conversation between yourself and myself, as your attorney, off the record, on the plea proceeding that was held on December 2nd, 2014?

A[:] I explained to you how I had a deal made with the prosecution, and they did not hold up their end of the deal.

Q[:] And the plea agreement that you believe you were entitled to was different than the one that was stated on the record on December 2nd, 2014, correct?

A[:] Correct.

Q[:] What was the difference between the plea agreement put on the record and the one you believed you were entitled to?

A[:] Well, I already made - they had already reduced the charges to those, and I was told that the sooner I pay the restitution off, they would drop the charges further down. And so I paid them off as quickly as possible.

Q[:] And who provided you with that information . . . ?

A[:] That would have been [my public defender].

. . . .

Q[:] At the time of entry of your plea on December 2nd, 2014, did you feel like you were coerced with regard to entering that plea?

A[:] Yes.

Q[:] Why is that?

A[:] I was just encouraged, I guess, maybe not coerced.

Q[:] And was that, in part, due to the issues that you previously noted with regard to the plea agreement?

A[:] Yes.

On cross-examination, Kirby stated that within a month of his September 2013 arrest, his public defender told him about the plea offer wherein the charges would be further reduced if restitution were paid quickly. When asked by the State what "further reduced" meant, Kirby responded, "That's just all [my public defender] would tell me."

There was also some discussion during cross-examination as to whether the plea offer Kirby was referring to was made in county court, but Kirby did not know where the offer was made. The State asked the district court "to take judicial notice of the court filing, including the transcript from county court that would have been bound over at the time," and the district court said it would do so. However, we note that the court file was not offered or received into evidence, nor does it otherwise appear in the record before us. But, at the December 2014 plea hearing (received into evidence at the motion to withdraw plea hearing), when discussing Kirby's understanding that under the plea agreement charges would be reduced considerably based on how quickly restitution was paid, defense counsel informed the court that Kirby may be referring to an original agreement to deal with his case in county court, when Kirby was represented by different counsel; current counsel's understanding was that the offer had been withdrawn and the case bound over to district court.

In overruling Kirby's motion to withdraw plea, the district court found the record clearly reflected that Kirby understood the nature and terms of the plea agreement. "At the time of the plea . . . the Court asked him if that was his understanding of the plea agreement, he indicated that it was not. . . . His exact words were, 'Not quite. They were supposed to reduce the charges considerably,' and then he goes on." The district court noted that Kirby was then given an opportunity to talk to his

counsel off the record, and when they were back on the record the following discussion was had (quoting directly from the plea hearing):

[Defense counsel]: Your Honor, I think we've cleared it up in speaking with . . . Kirby.

THE COURT: All right. . . . Kirby, have you had an opportunity to talk to your attorney?

[Kirby]: Yes, sir.

THE COURT: The plea agreement, as outlined by [the State], is that the plea agreement as you understand it today?

[Kirby]: Yes, sir.

THE COURT: And do you want the Court to accept that plea agreement?

[Kirby]: Yes, sir.

THE COURT: Other than this plea agreement, has anyone connected with law enforcement or the County Attorney's Office, or anyone else, made any promises, threats, or used any force or inducements to get you to plead no contest to these charges?

[Kirby]: No, sir.

. . . .

THE COURT: Do you still wish to plead no contest to each charge?

[Kirby]: Yes, sir.

THE COURT: Are you freely, voluntarily, knowingly and intelligently entering each plea of no contest and waiving your rights in this matter?

[Kirby]: Yes.

THE COURT: [Defense counsel], do you believe the pleas of no contest are consistent with the law and the facts?

[Defense counsel]: I do, Your Honor.

THE COURT: Do you believe your client is making each of these pleas freely, voluntarily, knowingly and intelligently?

[Defense counsel]: Yes, I do, Your Honor.

The district court, in continuing its oral pronouncement on Kirby's motion to withdraw plea, found the record clearly reflected that Kirby's pleas were freely, voluntarily, knowingly, and intelligently entered, and that the plea agreement was outlined clearly in court at the time of the plea hearing. Kirby indicated that he understood that was the agreement at the time of the pleas and wanted the court to accept that plea agreement. The court held that Kirby's motion to withdraw plea was "overruled and denied."

Kirby argues that given his confusion as to the plea agreement, he did not give voluntary and knowing pleas of no contest, and that the district court erroneously applied a heightened "manifest injustice" standard rather than a "fair and just" standard when it denied his motion to withdraw plea. Brief for appellant at 18. However, his argument that the district court applied an erroneous standard is not supported by the record. The district court noted that Kirby initially indicated some confusion as to the plea agreement, but after conferring with his counsel stated he understood the agreement and wanted the court to accept the agreement. The court also considered that the pleas were entered on December 2, 2014, and that the motion to withdraw plea was not filed until nearly 17 months later, on April 25, 2016 (and during the interim Kirby failed to appear and a warrant was issued for his arrest). Given the circumstances of this case, and in light of the case law cited above, Kirby failed to prove by clear and convincing evidence that he had a "fair and just" reason to withdraw his pleas. Accordingly, the district court's denial of Kirby's motion to withdraw plea was not an abuse of discretion.

*Excessive Sentences.*

[7] Kirby asserts that the district court imposed excessive sentences and did not give proper weight to the relevant sentencing factors. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation

for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. See *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Kirby was 51 years old at the time of the crimes and 54 years old at the time of sentencing. He obtained his GED in 1979 and had been unemployed since 1989. When asked by the probation officer why he does not work, Kirby said "'it's just not for me'" and stated his family provides for all of his financial needs. He lives with his father, and his brother pays for all of his food. According to a letter from the Lancaster County Department of Community Corrections to the district court, Kirby helps care for his 84-year-old father, who has Alzheimer's disease, and he helps his brother with the family farm.

Kirby has been divorced since 1995 and has three grown children, one of whom is disabled and lives with Kirby's ex-wife. Kirby had been in a relationship with the victim in this case on-and-off since 1997. He reported using marijuana daily from the age of 15 up until 4 months prior to his presentence investigation (PSI), which took place in July 2016. When asked how he was able to purchase marijuana since he does not work, Kirby said, "'I get money from my brother.'"

Kirby's criminal history includes convictions for manufacturing a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, "Attempt of Class 3A or Class 4 Felony," disturbing the peace, numerous traffic violations, and numerous failures to appear on citations. He has previously been on probation, had his probation revoked, and was subsequently incarcerated for 1 year.

Regarding his current convictions, Kirby physically assaulted his then girlfriend, T.G.; threatened to kill her; and damaged her home. According to her victim impact statement, T.G. was "traumatized by the incident" wherein she was punched, choked, and threatened. For several days after the incident, she was afraid to stay at her house alone. T.G. "felt violated,

humiliated and didn't feel safe for quite some time afterward." At the time of her victim impact statement, nearly 3 years had passed since the incident and T.G. had "moved on with [her] life."

As part of the PSI for his current conviction, the probation officer conducted a level of service/case management index. Kirby scored in the "high risk range" to reoffend. Due to the nature of the offense, he was also given a specific assessment for domestic violence (the "Domestic Violence Offender Matrix") and scored in the "high risk range."

According to the PSI, Kirby did not want to be considered for probation and said:

> "I would just rather do my time and be done. That is why I didn't show up for my first appointment. I thought this was optional. I didn't know me not showing up was going to piss the judge off. I thought if I didn't want probation there was no need to come."

He also did not take responsibility for the present offenses and told the probation officer that the victim was the one who assaulted him; when asked about the injuries to the victim he stated, "'She was quite capable of doing that to herself.'" He also denied damaging the home, saying the damage was already there. Kirby also stated that his brother paid the restitution, in full.

At the sentencing hearing, defense counsel stated that Kirby was not requesting probation, but was asking for the imposition of either a minimal jail sentence or a fine only. Counsel noted that Kirby was needed to help care for his father and his daughter, as well as to help his brother with the family farm. Counsel further noted that restitution for the criminal mischief charge had been paid in full.

The district court said it considered the PSI, additional letters from various persons (including the victim in the case), and the comments of defense counsel. The court said, "I can't ignore the serious nature of these offenses and the surrounding facts and circumstances. When this matter was originally

set for sentencing, you failed to appear and you were gone for approximately a year, or a little longer I believe." The court found that imprisonment was "necessary for the protection of the public, because the risk is substantial that during any period of probation, [Kirby] would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of [Kirby's] crimes and promote disrespect for the law." The district court sentenced Kirby to concurrent sentences of 270 days' imprisonment on each count, with 11 days' credit for time served.

At the time of Kirby's offenses (which occurred before L.B. 605), Class I misdemeanors were punishable by up to 1 year's imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014). Kirby's sentences were within the permissible sentencing range. Additionally, in exchange for his pleas, Kirby had one of his counts reduced from a felony to a misdemeanor, and another felony count was dropped. Having considered the relevant factors in this case, we find that Kirby's sentences are not excessive or an abuse of discretion and his sentences are therefore affirmed. See *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court); *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

*Appeal Bond.*

Initially, we note that we have found nothing in the record to suggest that Kirby motioned the district court to reduce his appeal bond. The State asserts that Kirby's failure to first seek reduction of his bond in the district court precludes him from challenging the bond amount on appeal; however, the State provides us no authority to support its assertion. Accordingly, we will address the merits of Kirby's assigned error regarding the appeal bond. Kirby contends that the district court set

an unreasonable appeal bond and "[t]his effectively failed to suspend the sentence pending the outcome of this appeal," and that this "was a clear abuse of discretion." Brief for appellant at 18. He argues that "[t]he establishment of a quarter million dollar bond on an appeal of two misdemeanor convictions is an excessive bond" in violation of Neb. Rev. Stat. § 29-2302 (Reissue 2016), as well as constitutional provisions protecting individuals from excessive bail. Brief for appellant at 18.

Section 29-2302 states:

> The execution of sentence and judgment against any person or persons convicted and sentenced in the district court for a misdemeanor shall be suspended during an appeal to the Court of Appeals or Supreme Court. The district court shall fix the amount of a recognizance, which in all cases shall be reasonable, conditioned that the appeal shall be prosecuted without delay and that in case the judgment is affirmed he, she, or they will abide, do, and perform the judgment and sentence of the district court.

See, also, U.S. Const. amend. VIII ("[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted"); Neb. Const. art. I, § 9 ("[a]ll persons shall be bailable by sufficient sureties, except for treason, sexual offenses involving penetration by force or against the will of the victim, and murder, where the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted").

Since no Nebraska case law specifically addresses factors to consider for appeal bonds set by the district court in misdemeanor cases under § 29-2302, our review is guided by the plain language of the statute, along with other statutes and case law pertinent to appeal bonds in criminal cases.

[8] We preliminarily observe that Neb. Rev. Stat. § 29-901 (Reissue 2016), which requires release on personal recognizance

or bond for "[a]ny bailable defendant," unless otherwise exempted, only applies to cases *before* judgment. "A bond to guarantee the appearance of a defendant at pretrial proceedings and at trial is distinct from an appeal bond after conviction." *State v. Hernandez*, 1 Neb. App. 830, 834, 511 N.W.2d 535, 538 (1993). A convicted person is treated differently than "one who is awaiting trial and still presumed innocent." *Id*. We note that the Nebraska Legislature recently amended § 29-901 to require a court to consider all methods of bond and conditions of release to avoid pretrial incarceration, including consideration of the defendant's financial ability to pay a bond and consideration of "the least onerous" of conditions to "reasonably assure the defendant's appearance or that will eliminate or minimize the risk of harm to others or the public at large." 2017 Neb. Laws, L.B. 259 § 2 (effective August 24, 2017). While these amendments may impact consideration of bonds pertinent to pretrial proceedings, the present matter involves the propriety of a bond ordered after a conviction. And as this court stated in *State v. Hernandez, supra*, a pretrial bond and an appeal bond after conviction are treated differently. We turn our attention to statutes and cases dealing with bonds after conviction.

With regard to an appeal bond after a felony conviction, our Supreme Court has stated that the

> right to bail, after conviction, is discretionary and not absolute. Once a defendant has been convicted of the felony charged, he is not entitled to be released on bail. Such determination is left to the discretion of the trial court who may prescribe the amount of the bond and the conditions thereof, including a requirement that the full amount of the bond be posted.

*State v. Woodward*, 210 Neb. 740, 747, 316 N.W.2d 759, 763 (1982). See, also, *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994) (no abuse of discretion in setting appeal bond at $50,000 when defendant had failed to appear after being released on bail in two prior cases).

[9] The above-cited cases make it clear that the setting of an appeal bond after a felony conviction is discretionary to the district court. We do note, however, that there is some difference in the statutory language regarding postjudgment bonds in felony cases and misdemeanor cases. Regarding a felony conviction, Neb. Rev. Stat. § 29-2303 (Reissue 2016) states in part:

> Whenever a person shall be convicted of a felony, and the judgment shall be suspended as a result of the notice of appeal, it shall be the duty of the court to order the person so convicted into the custody of the sheriff, to be imprisoned until the appeal is disposed of, or such person is admitted to bail.

Whereas, following a misdemeanor conviction, § 29-2302 states in part, "The execution of sentence and judgment against any person or persons convicted and sentenced in the district court for a misdemeanor shall be suspended during an appeal to the Court of Appeals or Supreme Court." Therefore, while the "judgment shall be suspended" on appeal in felony cases, the "execution of sentence and judgment . . . shall be suspended" on appeal in misdemeanor cases. In misdemeanor cases, the district court "shall fix the amount of a recognizance, which in all cases shall be reasonable." § 29-2302. Accordingly, § 29-2302 requires that a reasonable bond be set following a misdemeanor conviction in district court, whereas, § 29-2303 does not contain that same requirement following a felony conviction.

Interestingly, in appeals in criminal cases from county court to district court, the county court may exercise its discretion with regard to bail. Specifically, the execution of a sentence to a period of confinement shall be suspended only if "the county court, in its discretion, allows the defendant to continue at liberty under the prior recognizance or bail," or if "the defendant enters into a written recognizance to the State of Nebraska, with surety or sureties approved by the county court or with a cash bond, filed with the clerk of the county

court." Neb. Rev. Stat. § 25-2730(3) (Reissue 2016). Further, when a notice of appeal is filed, "the county court shall fix the amount of the recognizance or cash bond, which shall be a reasonable amount." *Id*. Additionally, § 25-2730(6) allows the district court to modify an appeal bond "on motion after notice and hearing and upon such terms as justice shall require," and our Supreme Court has indicated that such modifications are "consistent with the general discretion of the district court to prescribe the amount and conditions of an appeal bond in a criminal case." *State v. Griffin*, 270 Neb. 578, 583, 705 N.W.2d 51, 56 (2005).

[10] We conclude that the plain language of § 29-2302 requires that a bond be set in the present matter, because the execution of sentence and judgment against any person convicted and sentenced in the district court for a misdemeanor "shall be suspended" during an appeal to this court or the Supreme Court and because the district court "shall fix the amount of a recognizance." Further, the amount of the appeal bond should be reasonable. Our review of other related statutes and case law leads to the conclusion that reasonableness of the appeal bond amount is determined under the general discretion of the district court. Accordingly, we review the district court's decision regarding the amount of the appeal bond in this case for an abuse of discretion.

[11] In considering the reasonableness of the bond amount, we note that it has previously been argued that an indigent defendant could not post a $500 appearance bond and that this was excessive and violative of the federal and state Constitutions. In *State v. Howard*, 185 Neb. 583, 584-85, 177 N.W.2d 566, 567-68 (1970), our Supreme Court stated:

> Apparently it is appellant's contention that for most indigents any bail would be excessive. When an offense charged is a bailable one, discretion rests with the judge in fixing the amount of the recognizance, but this discretion is a judicial one. The question to be determined in every case that is bailable is not whether the

defendant may make bail, but whether or not the bail demanded is unreasonable and disproportionate to the crime charged. . . .

While the pecuniary circumstances of a prisoner should be considered in determining the amount of the bail, that in itself is not controlling. If that were determinative of the question, a defendant without means or friends would be entitled to be discharged on his recognizance regardless of the risk involved. As we said in In re Scott, [38 Neb. 502, 508-09, 56 N.W. 1009, 1010 (1893)]: "Many things should be taken into consideration in fixing the amount of bail, such as the atrocity of the offense; the penalty which the law authorizes to be inflicted in case of a conviction; the probability of the accused appearing to answer the charge against him, if released on bail; his pecuniary condition and the nature of the circumstances surrounding the case."

Definitely, a prior criminal record is an important factor to be considered. There is no merit to appellant's claim of the requirement of an excessive bond.

Notably, the factors discussed in the above-quoted cases were considered in a prejudgment context, and we offer no opinion as to any impact the amendments contained in L.B. 259 may have on bail considerations in the prejudgment context. That said, we see no reason why the foregoing considerations for fixing the amount of bail in a prejudgment context cannot similarly be considered in our review of the reasonableness of Kirby's appeal bond under § 29-2302 following his misdemeanor convictions. In particular, we consider the atrocity of Kirby's offenses, the probability of Kirby appearing to serve his sentences following the conclusion of his appeal, Kirby's prior criminal history, and the nature of other circumstances surrounding the case.

Kirby pled no contest to two Class I misdemeanors, one of which was a crime of violence against his then girlfriend. Kirby physically assaulted his girlfriend; he punched her in

the face, and forced her onto a bed, where he got on top of her, put his knees on her chest, and put one hand around her neck and the other on her head, causing significant red marks on her neck and her face. While assaulting his girlfriend of 15 years in this manner, he also threatened to kill her. Additionally, Kirby failed to appear for sentencing in February 2015 and a warrant was issued for his arrest. He remained at large for more than a year and was not arrested on the warrant until April 2016. He was ultimately sentenced in August 2016. As noted by the State, the district court did not make it impossible for Kirby to post bail, but given Kirby's avoidance of sentencing for over a year after conviction, the "court ensured that Kirby would lose a significant sum if he once again failed to appear and went on the run." Brief for appellee at 8. We also take into account Kirby's prior criminal history, which includes numerous failures to appear on citations and the revocation of probation. Additionally, Kirby has been unemployed since 1989, he gets money to support his marijuana use from his brother, his family provides for all his financial needs, his brother paid the restitution in this case, and Kirby failed to take responsibility for the present offenses. In other words, Kirby's unwillingness to be accountable, combined with the other factors noted, make the appeal bond in this case reasonable under these circumstances. We cannot say that the district court abused its discretion when it set the appeal bond "in the amount of $250,000 Reg. 10% bond." Accordingly, we affirm the appeal bond.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED.