Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2021 08:08 AM CDT

**State of Nebraska, appellee, v.
Jered P. Kearns, appellant.**

___ N.W.2d ___

Filed March 23, 2021.    No. A-20-497.

1. **Pleas: Appeal and Error.** An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Pleas.** After the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered.

5. **Pleas: Appeal and Error.** The right to withdraw a plea previously entered is not absolute, and, in the absence of an abuse of discretion on the part of the trial court, refusal to allow a defendant's withdrawal of a plea will not be disturbed on appeal.

6. **Pleas: Proof.** The burden is on the defendant to establish by clear and convincing evidence the grounds for withdrawal of a plea.

7. **Pleas: Evidence.** Newly discovered evidence can be a fair and just reason to withdraw a guilty or no contest plea before sentencing.

8. ____: ____. If a defendant moves to withdraw his or her plea because of newly discovered evidence, the court must consider the credibility of the newly discovered evidence.

9. **Effectiveness of Counsel: Conflict of Interest.** The right to effective assistance of counsel entitles the accused to his or her counsel's undivided loyalties, free from conflicting interests.

10. **Constitutional Law: Effectiveness of Counsel: Conflict of Interest.** The fact of multiple representation alone is not a per se violation of the Sixth Amendment.

11. **Effectiveness of Counsel: Conflict of Interest: Proof.** A defendant who raised no objection at trial must show that an actual conflict of interest existed. When an actual conflict exists, there is no need to show that the conflict resulted in actual prejudice to the defendant.

12. **Effectiveness of Counsel: Conflict of Interest: Presumptions: Proof.** If the defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests or the counsel's own personal interests and against the defendant's interests, prejudice is presumed.

13. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

14. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

15. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Dawes County: Travis P. O'Gorman, Judge. Affirmed.

Audrey M. Elliott, of A. Elliott Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Moore, Bishop, and Welch, Judges.

Moore, Judge.

## INTRODUCTION

Jered P. Kearns appeals from his plea-based conviction of attempted first degree assault in the district court for Dawes County. Kearns asserts that the district court abused its discretion in not allowing him to withdraw his plea and in sentencing him to incarceration rather than probation. For the reasons that follow, we affirm.

## BACKGROUND

Kearns was originally charged with first degree assault, a Class II felony. Pursuant to a plea agreement, Kearns thereafter pled no contest to the amended charge of attempted first degree assault, a Class IIA felony. At the plea hearing, the district court advised Kearns of the rights that he would be waiving by entering a plea and of the possible penalties; Kearns indicated his understanding of the rights that he would be waiving and of the possible penalties. Kearns denied that he had been promised anything in order to plead or was threatened in any way. A factual basis was given showing that Kearns and two other individuals were involved in an assault on the victim. Specifically, the factual basis recited as follows:

> The physical confrontation initiated when [Kearns] hit [the victim] with a fist. Both [the victim] and [Kearns] went to the ground. During the altercation [the victim] suffered a separation — separated shoulder that required surgery for correction.
>
> Also during the confrontation, he suffered a serious bodily injury to his right eye — his left is blind initially — which also required medical attention. That occurred apparently when [the codefendant] kicked [the victim] in the face while he was on the ground.

The court found that Kearns' plea of no contest to the amended information was knowingly and voluntarily made, and the court accepted the plea, finding Kearns guilty of the amended charge.

Kearns' trial counsel also represented the codefendant, Keith Coomes, in charges stemming from the assault. Kearns was present at status conferences in court prior to his plea hearing where his trial counsel referenced representing Coomes and discussed the discovery being done in both cases. Coomes did not plead but went to trial after Kearns entered his plea. His trial resulted in a mistrial due to a deadlocked jury.

Approximately 2 months following the plea hearing and after Coomes' trial, Kearns filed a motion to withdraw his guilty plea. After two continuances filed by Kearns' trial counsel, new counsel was appointed to represent Kearns and an amended motion to withdraw the plea was filed. The amended motion alleged that there was newly discovered evidence, which did not support the conviction; that Kearns' former trial counsel had a conflict of interest in representing him because he represented a codefendant and a named State's witness in another case; and that his former counsel could have with reasonable diligence learned of the newly discovered evidence but did not do so, which prejudiced Kearns. Kearns also alleged that his request to withdraw his plea was prior to sentencing and that withdrawal of the plea would not substantially prejudice the State.

A hearing was held on the motion at which several exhibits were received in evidence, including a partial transcript from Coomes' trial with testimony from the victim of the assault. The victim testified that he was in a physical altercation with Kearns when "[a]bout the moment [the victim arrived at the scene], [Kearns] stepped forward and started throwing punches and it went bad from there." The victim testified that one of Kearns' initial punches "grazed" the side of the victim's head. During the struggle, the victim grabbed Kearns and they "went down to the ground." According to the victim, after they "rolled around for a little bit," they broke apart and stood back up, after which "[Kearns] commenced to try to headbutt" and hit the victim in the chin. They then "went at it again." After that, the victim "took [Kearns] down again." At some point

while the victim and Kearns were on the ground, the victim felt someone kick him in the face. He testified that he did not know who kicked him at the time. Later, in response to a question about his shoulder injury, the victim stated that Coomes was the one who kicked him, but this answer was stricken by the trial judge upon objection by Coomes' (and Kearns') attorney. The victim verified that any knowledge of who kicked him "would've come from somebody else telling [him]." The victim's testimony shows that his son came outside during the fight, and the police reports contained in the presentence investigation report (PSR) show that the victim's son saw Coomes kick the victim.

The victim's shoulder was dislocated during the fight. He thought that this may have occurred when he "put [Kearns] back down on the ground" the second time but was not certain of the timing, testifying that he "didn't really realize that that happened until it was all over and [he] was dragging [his] arm off of [Kearns]." He did not believe that Coomes had anything to do with the shoulder injury.

Following the fight, the victim was treated in an emergency room for his shoulder injury. He testified that his shoulder was "sitting approximately 3 inches out of socket," that emergency room personnel had to anesthetize him twice, and that he had bruising across his chest "from them trying to hold [him] still while they put it in." The victim testified his shoulder required followup surgical treatment due to torn tendons and ligaments. At the time of his testimony he had "six to seven suture pins" in his shoulder and was undergoing physical therapy. He testified that his shoulder was healing but that "[i]t just takes a long time . . . ."

The victim testified that his right eye swelled shut and remained that way for 3 or 4 days following the fight, leaving him with no vision for that period as he is legally blind in his left eye. Various medical and eye care appointments revealed that he had suffered a cracked eye socket and a broken nose.

He testified that his right eye was "for the most part okay" although he had "lost a little bit of vision."

In its written order, the district court denied Kearns' motion to withdraw his plea. The court found that Kearns failed to show any "fair and just reason" to be allowed to withdraw his plea. The court found that he was properly advised of his constitutional and statutory rights and knowingly and intelligently entered his plea. With regard to the alleged conflict of interest, the court found that both Kearns and Coomes hired trial counsel with the full understanding that he represented both of them. The court found that Kearns waived any potential conflict of interest through his acquiescence. The court then found that the victim's testimony at Coomes' trial was not new evidence and did not exonerate Kearns. To the contrary, the court noted that the testimony showed that Kearns was the aggressor during the altercation.

The district court sentenced Kearns to 6 to 8 years' imprisonment, with credit for 89 days previously served.

Kearns timely appeals.

## ASSIGNMENTS OF ERROR

Kearns assigns that the district court abused its discretion (1) in not allowing him to withdraw or vacate his plea of no contest, because he was prejudiced and induced by ineffective assistance of counsel, and (2) in its sentencing of Kearns, by denying him probation and imposing an excessive sentence.

## STANDARD OF REVIEW

[1] An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *State v. Canaday*, 307 Neb. 407, 949 N.W.2d 348 (2020).

[2,3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). An abuse of discretion occurs when a trial court's

decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

*Denial of Motion to*
*Withdraw Plea.*

Kearns assigns that the district court abused its discretion in denying his motion to withdraw his plea of no contest to the amended charge of attempted first degree assault.

[4-6] After the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). See, also, *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000) (reaffirming standard is that court *may* allow defendant to withdraw plea, not that court *should* allow defendant to withdraw plea). The right to withdraw a plea previously entered is not absolute, and, in the absence of an abuse of discretion on the part of the trial court, refusal to allow a defendant's withdrawal of a plea will not be disturbed on appeal. *State v. Ortega, supra.* The burden is on the defendant to establish by clear and convincing evidence the grounds for withdrawal of a plea. *Id*.

Kearns argues that the victim's testimony at Coomes' trial was new evidence and supported his request to withdraw his plea. Specifically, he points to trial counsel's cross-examination of the victim which elicited testimony about Kearns' starting the fight and the shoulder injury to the victim resulting from his struggle with Kearns. He further argues that because Coomes' trial resulted in a mistrial, it created doubt that Kearns would have been convicted. Finally, Kearns asserts that the record from Coomes' trial shows that the serious bodily injury to the victim was to his eye, which was caused by Coomes,

not Kearns. Kearns asserts that the dislocated shoulder which occurred during his struggle with the victim did not amount to serious bodily injury.

[7,8] Newly discovered evidence can be a fair and just reason to withdraw a guilty or no contest plea before sentencing. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). If a defendant moves to withdraw his or her plea because of newly discovered evidence, the court must consider the credibility of the newly discovered evidence. *Id.* Here, the district court did not err in its determination that the victim's testimony at Coomes' trial was not new evidence and did not exonerate Kearns. With respect to who did what during the fight, the victim's testimony at Coomes' trial was consistent with the recital of the factual basis at Kearns' plea hearing, as well as with the accounts of the incident found in the police reports that are in the PSR.

Despite Kearns' assertions to the contrary, the record shows that the shoulder injury to the victim resulting from his struggle with Kearns was a serious bodily injury. "Bodily injury" is statutorily defined to mean "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4) (Reissue 2016). And, "[s]erious bodily injury" is defined to mean "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 28-109(21). The victim's testimony at Coomes' trial shows that the victim was treated in an emergency room following the fight and that he had to be anesthetized twice before his dislocated shoulder could be put back into place. He was also administered pain medication. This information was also in the police reports, and the victim advised the police that he was going to require further surgery. The victim underwent a subsequent surgery to repair torn tendons and ligaments from the dislocation, had "six to seven suture pins" placed in his shoulder, and received physical therapy. He did not miss a lot of work but was placed

on light duty following the shoulder injury. The fight occurred in May 2018, and at the time of his testimony in September 2019, his shoulder was getting better but had not yet fully healed. The record supports that the shoulder injury was a serious bodily injury.

Kearns further argues that there was a clear conflict of interest by his trial counsel in his representation of both Kearns and Coomes. Kearns argues that trial counsel's conflict of interest and failure to adequately defend him amounted to ineffective assistance of counsel and that accordingly, he should have been allowed to withdraw his plea. As noted above, Kearns entered his plea prior to Coomes' trial.

[9-12] The right to effective assistance of counsel entitles the accused to his or her counsel's undivided loyalties, free from conflicting interests. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). The fact of multiple representation alone is not a per se violation of the Sixth Amendment. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). A defendant who raised no objection at trial must show that an actual conflict of interest existed. *Id.* When an actual conflict exists, there is no need to show that the conflict resulted in actual prejudice to the defendant. *Id.* If the defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests or the counsel's own personal interests and against the defendant's interests, prejudice is presumed. *Id.* See, also, *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (where there is no timely objection, defendant who shows that conflict of interest actually affected adequacy of representation need not demonstrate prejudice to obtain relief).

This court has previously observed that while Nebraska case law may not "'articulate'" a definition for "'fair and just,'" it does provide guidance on what is or is not considered a fair and just reason to withdraw a presentence guilty or no contest plea. See *State v. Kirby*, 25 Neb. App. 10, 16, 901

N.W.2d 704, 710 (2017). But, we have not found any cases in Nebraska addressing what constitutes a fair and just reason to withdraw such a plea based upon alleged ineffective assistance of counsel due to a conflict of interest through concurrent representation or applying the above-referenced standards in the context of such a motion. However, federal courts have addressed this issue (as well as the issue of personal conflicts of interest) in the context of Fed. R. Crim. P. 11(d), under which a defendant may withdraw a plea of guilty before sentence is imposed where "the defendant can show a fair and just reason for requesting the withdrawal." See, *U.S. v. Sharp*, 879 F.3d 327 (8th Cir. 2018), cert. denied ___ U.S. ___, 139 S. Ct. 345, 202 L. Ed. 2d 242 (no abuse of discretion in refusing to allow withdrawal of guilty plea where defense counsel's alleged conflict of interest as fact witness did not adversely affect counsel's performance in advising defendant to plead guilty); *U.S. v. Berkeley*, 567 F.3d 703 (D.C. Cir. 2009) (affirming rejection of defendant's presentence motion under federal rule 11 to withdraw plea due to ineffective assistance of counsel based upon conflict of interest after finding alleged conflict could not have adversely affected attorney's performance); *U.S. v. Cruz-Camacho*, 682 F. Supp. 2d 193 (D. Puerto Rico 2010) (denying presentence motion to withdraw plea where defendant failed to show that any conflict due to representation of him and potential prosecution witness actually affected his counsel's representation, i.e., no fair and just reasons were established); *U.S. v. Verducci*, 384 F. Supp. 2d 495 (D. Mass. 2005) (denying motion to withdraw presentence guilty plea where defendant failed to show concurrent representation placed him in more disadvantageous position than he would have occupied had attorney not represented other individual at all).

Here, while there was a conflict of interest by trial counsel's concurrent representation of both Kearns and Coomes, Kearns has failed to show that the concurrent representation placed him in a more disadvantageous position than he would

have occupied had counsel not represented Coomes. The evidence regarding Kearns' involvement in the assault was distinct from the evidence regarding Coomes. The record shows that Kearns instigated the assault and caused the victim serious bodily injury to his shoulder during the altercation. The evidence regarding Coomes was that he kicked the victim in the head while he was on the ground; Kearns was not implicated in this action or the resulting injury. This information was contained in the police reports and established in the factual basis recited at Kearns' plea hearing. Clearly, this information was known by trial counsel prior to his advice to Kearns regarding entry of a plea. Thus, trial counsel's representation of Coomes would not have changed the outcome in Kearns' case, and the conflict of interest did not adversely affect counsel's advice to Kearns to enter a plea to the charge.

Based upon this record, we cannot say that the district court abused its discretion in concluding that Kearns did not meet his burden of proving, by clear and convincing evidence, a fair and just reason for withdrawal of his plea.

*Sentence Imposed.*

Kearns assigns that the district court abused its discretion by imposing an excessive sentence. Kearns was convicted of a Class IIA felony, which is punishable by imprisonment of up to 20 years. See Neb. Rev. Stat. § 28-105 (Reissue 2016). The sentence of 6 to 8 years' imprisonment was well within the statutory limits.

[13-15] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social

and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The PSR was prepared prior to the original sentencing hearing set in November 2019. However, because of Kearns' motion to withdraw his plea filed prior to sentencing, the delays resulting from trial counsel's continuance motions, the appointment of new counsel, and the filing of an amended motion to withdraw plea and hearing thereon, the sentencing hearing did not take place until July 2020. Kearns first complains that the district court failed to request an updated PSR, which would have shown his progress on probation. However, the district court did allow testimony from Kearns and his former wife at the sentencing hearing, and Kearns also offered two exhibits. This evidence showed that Kearns had maintained sobriety since October 2019, he had not engaged in any assaultive-like behavior since the incident, he was willing to obtain treatment for his mental health and substance use issues, and he had improved his relationship with his family. Thus, Kearns was not prejudiced by the failure of the court to request an updated PSR. Kearns further claims that the district court had already determined to sentence him to incarceration 4 months prior to sentencing when it referenced in Kearns' divorce decree his multiple criminal cases that would ultimately lead to a prison sentence. We decline to find that reference to his pending criminal cases in Kearns' dissolution action amounted to an abuse of discretion in the sentencing at issue in this case.

Kearns was 33 years old at the time the PSR was prepared. He was separated from his wife at that time, and he has four children. He was a self-employed construction worker.

The PSR shows that although Kearns has had many charges dismissed, he has been convicted of accessory to a felony, driving under suspension (twice), possession of marijuana 1 ounce or less, driving under the influence (twice), assault by mutual consent, disturbing the peace, and numerous traffic offenses. After the occurrence involved in this case, Kearns was convicted of driving under suspension (twice), as well as two counts of possession of a controlled substance (methamphetamine and heroin), for which he was placed on probation. A probation violation on the possession case was filed on September 12, 2019. Kearns was also charged with violation of a harassment protection order for which disposition had not yet occurred at the time of the PSR in this case. The PSR includes a probation report from his possession charges completed in July 2019. The "Level of Service/Case Management Inventory" evaluation completed at that time shows that Kearns scored overall in the "Very High" risk to reoffend category. A mental health and substance use evaluation performed in September 2019 showed that Kearns was diagnosed with post-traumatic stress disorder, attention deficit hyperactivity disorder, "[b]ipolar II" disorder, unspecified anxiety disorder, moderate methamphetamine substance use disorder, and mild alcohol use disorder. The evaluation recommended outpatient services for mental health and substance use disorder treatment.

At sentencing, the district court considered the remarks of both Kearns' counsel and the county attorney and "carefully" considered the PSR. The court specifically noted the statutory factors it considered as set forth above. The court discussed Kearns' "long criminal history" and "significant pattern of assaultive behavior and substance abuse issues." The court referenced that it gave Kearns a chance on probation in his last case, which "didn't work well" as there had just been a hearing on a motion to revoke his probation. The court noted that Kearns was the instigator in this fight, which caused serious injuries to the victim. The court concluded that anything

less than a period of incarceration would depreciate the seriousness of the offense and promote a disrespect for the law.

It is clear that the district court considered the appropriate sentencing factors. We find no abuse of discretion in the sentence imposed.

## CONCLUSION

The district court did not abuse its discretion in denying Kearns' motion to withdraw his plea and in its sentencing of Kearns.

AFFIRMED.